No. ——

First Circuit

——

LEGENDRE v. BARKER

——

(February 12, 1927. Opinion and Decree.)

——

(*Syllabus by the Editor.*)

1. Louisiana Digest—Admiralty—Par. 4.

A contract of employment of the chief engineer of a steamboat, operating on

navigable waters, is maritime in its nature.

2. **Louisiana Digest—Admiralty—Par. 2; Master and Servant—Par. 156.**

The state courts of Louisiana have no jurisdiction in the case of the injury or death of an employee while working on a steamboat operating on navigable waters between two Louisiana ports, because the action is based on a maritime contract, the Federal Employer's Liability Act applies, and the Federal courts have exclusive original cognizance.

3. **Louisiana Digest—Master and Servant —Par. 153.**

An action for compensation under the Employer's Liability Act, No. 20 of 1914, is based upon a contract and not a tort.

4. **Louisiana Digest—Admiralty—Par. 1, 2; Courts—Par. 168.**

Under Article 3, Section 2, Paragraph 1, of the Constitution of the United States, Federal district courts have exclusive original cognizance of maritime cases under the Federal Employer's Liability Act.

Appeal from Lafourche Parish. Hon. Robert B. Butler, Judge.

Action by Mrs. Felix Legendre against Alexander James Barker.

There was judgment for plaintiff and defendant appealed.

Plea to the jurisdiction maintained and case dismissed.

Howell, Wortham & Bourg, of Thibodaux, attorneys for plaintiff, appellee.

John D. Nix, of New Orleans, attorney for defendant, appellant.

MOUTON, J. Felix Legendre, Jr., was, in July, 1925, an employee of the defendant, Barker, as the chief engineer of the steamer, Climax, which was owned and operated by defendant.

On July 24, 1925, as the result of a sudden squall, which occurred on the Mississippi river, the steamboat, Climax, was capsized and Legendre was drowned in the river.

Felix Legendre was unmarried at the time of the accident, and this suit is brought by his surviving mother, widow of Felix Legendre, Sr., against defendant under the Employers' Liability Act of this state.

Among other defenses presented by defendant, he filed an exception to the jurisdiction of the District Court, claiming that this case falls under admiralty jurisdiction.

This exception was overruled. Defendant appeals.

As it is undisputed that deceased lost his life in the Mississippi, a navigable river, the sole question to be determined is as to whether his employment was maritime in its nature.

In the case of Jones vs. Crescent City Ice Co., S. R., Vol. 110, No. 2, p. 182, it was shown that the deceased, Beasly, while carrying ice to the steamship, Garry, while the vessel was lying in the Mississippi river, fell through an open hatch on board the steamship and was killed. The court, on rehearing, held that Beasly was employed in carrying out a maritime contract, precluding jurisdiction of the state court under the Workmen's Compensation Act of 1914. In support of their contention that the state court has jurisdiction, counsel for plaintiff refer us to the case of Millers Underwriters vs. Braud, reported in United States S. C. Reports, advance sheets February 1, 1926. In that case plaintiff sued under the Workmen's

Compensation Act of Texas for the death of her brother, who lost his life as a diver on a floating barge some 35 feet from the bank of the Sabine river, a navigable stream. Counsel for plaintiff contend that, though the drowning of Boudreaux in the case above cited was a maritime tort, yet the subject was so local in its nature that the regulatory provisions of the Compensation Act could work no prejudice to the harmony and uniformity of the maritime law; that Boudreaux's employment, though maritime, was purely of local concern, and had no special relations to commerce and navigation between states or with foreign states.

Arguing from these premises, counsel contend that, though plaintiff's employment in this case was maritime, it was purely local and had nothing to do with commerce and navigation between the states or with foreign countries. Counsel for plaintiff argue that this suit, being based on the Workmen's Compensation Act, as was the Braud case, above mentioned, is a matter of local concern which could not in any way jeopardize or disturb the uniformity and harmony securing the application of admiralty jurisdiction as established under the grant of the Federal Constitution.

They contend that the cases of Jensen vs. Knickerbocker, Inc., Co. and Peters vs. Veazy, decisions, of the Supreme Court of the United States, are not at variance with the conclusions of the court in the Braud case, and do not conflict with the ruling in that case, as they understand or construe the decision.

In the case of Jones vs. Crescent City Ice Co., above referred to, though the court made no reference to the Braud case, which had, however, been decided several months before, it based its decision among other cases, on the cases of Jensen, Veazy and Knickerbocker, and held contrary to the contentions of counsel for plaintiff, that the contract in that case being maritime in its nature the state court had no jurisdiction under the Workmen's Compensation Law of 1914. This is the interpretation the Supreme Court of this state placed upon those decisions and to which we must adhere in the exercise of our inferior jurisdiction.

We now pass to the consideration of the next question upon which plaintiff relies for the maintenance of the jurisdiction of the District Court. In the statement of facts upon which this case comes to us we find the following admission: "It is admitted that the Climax was engaged in running and transporting freight, etc., from Lockport, located in the parish of Lafourche, to the city of New Orleans, through Bayou Lafourche and the Harvey canal leading into the Mississippi river".

It is evidence from the foregoing admission that deceased was employed in navigation for commercial purposes from Lockport through Bayou Lafourche and the Mississippi, two navigable rivers, to the city of New Orleans. On this question counsel for plaintiff say, though there can be no doubt that plaintiff's son was employed on a boat operating on navigable waters and that his death was a maritime tort, still the jurisdiction of the admiralty court does not attach, as he was operating a boat entirely within the state of Louisiana, and had no possible occasion to ply his craft in interstate or foreign waters. In this case it is not disputed that the accident was a maritime tort, as it occurred in a navigable river. Such being the situation, the fact that the steamboat in question was plying its trade between Lockport and the city of New

Orleans, two points within the boundaries of this state, cannot avail plaintiff, as the Supreme Court of the United States in the case of the Steamboat Belfast in Book 19, 7, Wallace, p. 266, on this subject, held as follows,:

"Admiralty has jurisdiction over maritime torts, though the voyage is between ports and places in the same state."

This ruling of the court disposes of that contention, unless it has since been overruled by some later decision of which we are not aware, and to which we have not been referred. In that case the court reaffirmed the doctrine that locality is the true test of admiralty cognizance in all cases of maritime torts, which was also recognized as the settled rule by our court in Jones vs. Crescent City Ice Co. The proof shows that Legendre was drowned in the Mississippi river, which was clearly a maritime tort. The Federal courts have "exclusive original cognizance" of such cases, and the state tribunals have no jurisdiction.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be avoided and set aside; that the plea to the jurisdiction of the court below be maintained, and that this case be dismissed at the cost of the plaintiff in both courts.

———

LECHE, J., concurring. Felix Legendre, Jr., was chief engineer on the "Climax", a steamboat which was navigated on bayous, shallow lakes and on the Mississippi river, while engaged in the business of a common carrier between Lockport and New Orleans, inside the territorial limits of the state of Louisiana. He was drowned as the result of a storm, and without any negligence on the part of the master of the boat. The defendant, who was owner of the "Climax", carried no accident insurance as indemnity against accidental injury or death of his employees, the crew of the boat. The plaintiff, who is the mother and a dependent of Felix Legendre, Jr., sued for compensation under the Louisiana Employers' Liability Act. She recovered judgment in the District Court, and defendant prosecutes the present appeal from that judgment.

The question in the case is whether the Employers' Liability Act of the State of Louisiana may be applied to the present cause of action, as being under Federal admiralty jurisdiction. The Louisiana statute does not in express terms mention engineers engaged on steamboats while plying upon navigable streams, but it does include within the terms of its provisions persons engaged in "the operation * * * of * * * vessels, boats and other watercrafts * * *", so that the employment of Felix Legendre, Jr., the deceased, may be conceded to be covered by its provisions.

It must further be observed that, under the terms of that statute, the right of the employee to recover compensation, except where the employer and the employee have agreed otherwise, forms part of the contract of employment (Philps vs. Guy Drilling Company, 143 La. 956, 79 South. 549), and, therefore, that the present cause of action is not based upon tort but upon contract. The statute further limits the employee solely to a demand for compensation and negatives his right to redress in an action for tort.

The employment of the deceased is conceded to have been of a maritime nature. Indeed, the Supreme Court of the United States, in the case of State of Washington vs W. C. Dawson & Company, 264 U. S.

219, says that "the work of a stevedore, in which the deceased was engaged, is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction". A fortiori was the work of an engineer on a steamboat plying upon navigable streams maritime and within the admiralty jurisdiction. In the case of Grant Smith-Porter Ship Co. vs. Herman F. Rohde, 257 U. S. 469, the court held that (quoting from the syllabus):

"In contract matters, admiralty jurisdiction depends upon the nature of the transaction, and, in matters of tort, upon the locality."

Conceding that the deceased was employed in a maritime occupation, and that his contract of employment was within the admiralty jurisdiction, plaintiff claims, nevertheless, that the Louisiana statute is applicable and she cites in support of her contention the case of Millers' Indemnity Underwriters vs. Nellie Boudreaux Braud, decided by the U. S. Supreme Court, February 1, 1926, and reported in advance sheets of February 15, 1926. It was held in that case (quoting from the syllabus), "although the work of an employee in removing the timbers of an abandoned set of ways in navigable waters of the United States is maritime in its nature, the state in which the work is being performed may make its Workmen's Compensation Act exclusively applicable to injuries received in the course of the work so as to exclude the jurisdiction of admiralty over the claim, since the matter is one of mere local concern and its regulation by the state will work no material prejudice to the characteristic feature of the general maritime law". She also relies upon the case of

Grant Smith-Porter Ship Co. vs. Rohde, 257 U. S. 469, already cited in this opinion, where it was held that: "A shipbuilding company and a carpenter employee having both accepted and proceeded under a state workmen's compensation statute, by making payments to an industrial accident fund, cannot be said to have contracted consciously with each other in contemplation of the general system of admiralty law governing their rights, obligations and consequent liabilities in case the employee should be accidentally injured while engaged in the work of finishing an incomplete vessel lying on navigable waters within the state". In the course of the opinion the court says:

"The contract for constructing the Ahala," the vessel on which the complainant was injured, "was not maritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment, nor his activities at the time had any direct relation to navigation or commerce."

It is apparent that the last cited case is not parallel with the case at bar. The shipbuilding company and the employee had accepted and acted under the accident insurance contract and the employee's labor was held as having no direct relation to navigation or commerce.

In the Braud case the employing company carried a policy of insurance with the plaintiff in error and was regarded as a subscriber to the Texas Employers' Insurance Association. The suit was by the employee's beneficiary directly against the insurance company and the employing company does not appear to have been a party thereto. It also appears from the conceded facts in that case that the employee's occupation at the time had no direct relation to navigation or commerce, and the court held the matter to be one of

merely local concern and that its regulation by the state did not work any material prejudice to the characteristic feature of the general maritime law.

The employee in the present case was employed for and actively engaged in the operation of a steam vessel plying upon navigable streams, and his employment had direct relation with navigation and commerce. It does not appear that either he or his employer contracted with reference to the Louisiana Employers' Liability Act. The cases cited by plaintiff do not, therefore, appear to be authority to sustain the judgment from which the defendant has appealed.

By Article 3, Section 2, Paragraph 1, of the Constitution of the United States, its judicial power extends to all cases of admiralty and maritime jurisdiction and by the judicial code of the United States, Act of Congress, March 3, 1911, Section 24, Paragraph 3, the District Courts of the United States are vested with exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction. Again, the Louisiana statute, if applied to this case, would, in effect, destroy the uniformity of the maritime law as generally recognized throughout the country, for all maritime contracts made in the state would, by virtue of the statute itself and not by the will and with the consent of the parties, be conditioned with a stipulation providing for compensation as an integral part of such contracts.

It therefore appears, that the employment in which Felix Legendre, Jr., was engaged is beyond the control of the state legislature, and that to apply the Louisiana Employers' Liability Act in the present case would be an encroachment upon Federal admiralty jurisdiction.

For the foregoing reasons I hereby concur in the opinion.